UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 1:16-CV-21893

DAWN JORDAN, JENNIFER GONZALEZ, and
AIDILIY MIZRACHI, on behalf of themselves
and all others similarly situated,

        Plaintiffs,

vs.

SOUTH FLORIDA RACING ASSOCIATION, LLC
d/b/a HIALEAH PARK CASINO, A Florida limited
liability company,

        Defendant.

_____/

**<u>PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE CLASS ACTION
SETTLEMENT, APPROVAL OF SERVICE AWARDS AND INCORPORATED
MEMORANDUM OF LAW IN SUPPORT</u>**

Submitted by:

| | |
|---|---|
| **LAW OFFICES LEVY & LEVY, P.A**. | **WHITELOCK & ASSOC., P.A.** |
| 1000 Sawgrass Corporate Parkway, Suite 588 | 300 Southeast 13th Street |
| Sunrise, Florida 33323 | Fort Lauderdale, FL  33301 |
| Telephone: (954) 763-5722 | Telephone:  954.463.2001 |
| Facsimile:  (954) 763-5723 | Facsimile: 954.463.0410 |
| | |
| */s/   Chad E. Levy* | */s/ Christopher J. Whitellock* |
| Chad E. Levy, Esq. | Christopher J. Whitelock |
| Florida Bar No.: 851701 | Florida Bar No.:  67539 |
| chad@levylevylaw.com | cjw@whitelocklegal.com |

*Attorneys for Plaintiffs and the Settlement Class*

1

# TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................................. 6

II.   FACTUAL AND PROCEDURAL BACKGROUND ..................................................... 8

A.   Factual Allegations ................................................................................................ 8

B.   Procedural History ................................................................................................. 9

C.   Discovery ................................................................................................................ 9

D.   Settlement Negotiations and Mediation ............................................................ 9

III.   SUMMARY OF THE SETTLEMENT TERMS ......................................................... 10

A.   The Settlement Fund ........................................................................................... 10

B.   Release .................................................................................................................. 10

C.   Eligible Class Members ...................................................................................... 11

D.   Allocation Formula .............................................................................................. 11

E.   Service Payments. ................................................................................................ 12

IV.   SETTLEMENT CLAIMS ADMINISTRATION .......................................................... 13

V.   ARGUMENT ..................................................................................................................... 14

A.   The Settlement Class Meets the Legal Standard for Class Certification. ................... 14

1.   Numerosity ................................................................................................... 15

2.   Commonality ................................................................................................ 16

3.   Typicality ...................................................................................................... 17

4.   Adequacy ....................................................................................................... 17

5.   Predominance and Superiority .................................................................. 18

B.   The Proposed Settlement is fair, reasonable, and adequate, and should be approved. .................. 19

1.   The Settlement is Fair, Reasonable, and Adequate ................................ 20

a.   The Likelihood of Success at Trial ............................................... 20

b.   Range of Possible Recovery and Range at Which Settlement is Fair .................. 22

c.   Litigation Through Trial Would Be Complex, Costly, and Long ......................... 23

d.   The Reaction to the Settlement Has Been Favorable and In Accord with Similar Cases ..... 24

e.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly 25

2.   The Service Awards Are Reasonable and Should Be Awarded ............................. 27

C.   Approval of the FLSA Settlement is Appropriate under Federal Law ....................... 28

VI.   CONCLUSION ................................................................................................................... 29

2

# TABLE OF AUTHORITIES

**Cases**

*Allapattah Servs., Inc. v. Exxon Corp.,* 454 F. Supp. 2d 1185 (S.D. Fla. 2006)....................12, 28

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001) ............................29

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988)........................................22

*Bennet v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984) ...............................................19, 20, 24

*Briggs v. Hartford Fin. Servs. Grp., Inc.*, No. 07–CV–5190, 2009 WL 2370061 (E.D. Pa. July 31, 2009) ....................................................................................................................................24

*Browne v. Am. Honda Motor Co.*, No. CV 09–06750 MMM (DTBx), 2010 WL 9499072 (C.D. Cal. 2010)..............................................................................................................................24

*Canupp v. Liberty Behavioral Healthcare, Corp.,* 447 F. App'x 976(11th Cir. 2011) ..............20

*Cotton v. Hinton*, 559 F.2d 1326(5th Cir. 1977)..................................................................19, 20

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ..........................................................21

*Date v. Sony Electronics, Inc.*, No. 07–15474, 2013 WL 3945981 (E.D. Mich. July 31, 2013).25

*David v. Am. Suzuki Motor Corp.*, No. 08–CV–22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) ...................................................................................................................................27

*deMunecas v. Bold Food, LLC*, No. 09 Civ. 00440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ...................................................................................................................................29

*Diaz v. E. Locating Serv. Inc.,* No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2012) ...................................................................................................................................29

*Encarnacion v. J.W. Lee, Inc. d/b/a Scarlett's Cabaret*, No. 14-CIV-61927-DIMITROULEAS (S.D. Fla. 2015)...................................................................................................................passim

*Fabricant v. Sears Roebuck,* 202 F.R.D. 310 (S.D. Fla. 2001) ...........................................16, 17

*Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677-CIV, 2008 WL 649124 (S.D. Fla. 2008) ...................................................................................................................................24

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174(W.D.N.Y. 2005) .............................................20

*Garcia v. Gloor*, 618 F.2d 264 (5th Cir. 1980)........................................................................15

*Garcia-Celestino v. Ruiz Harvesting, Inc.*, 280 F.R.D. 640 (M.D. Fla. 2012) ..........................15

*Hall v. Bank of America, N.A.*, No. 1:12–cv–22700–FAM, 2014 WL 7184039 (S.D. Fla. Dec. 17, 2014) ............................................................................................................................25

*Henry v. Little Mint, Inc.,* No. 12 CIV. 3996 CM, 2014 WL 2199427(S.D.N.Y. May 23, 2014) ...................................................................................................................................13

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 177 (S.D.N.Y. 2000)…. ...................................................................................................................................21, 23, 26

*In re Checking Account Overdraft Litiq.*, 830 F. Supp. 2d 1330, 1340 (S.D. Fla. 2011)......15, 18

*In re Ira Haupt & Co.,* 304 F. Supp. 917 (S.D.N.Y. 1969) ......................................................21

*In re New Motor Vehicles Canadian Export Antitrust Litig.*, MDL No. 1532, 2011 WL 1398485 (D. Me. Apr. 13, 2011) ..........................................................................................................25

*In re Newbridge Networks Securities Litig.*, No. CIV. A. 94–1678–LFO, 1998 WL 765724 (D.D.C. Oct. 23, 1998)........................................................................................................23

*In re Nissan Motor Corp. Antitrust Litiq.,* 552 F.2d 1088 (5th Cir. 1977) ...............................14

*In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104(S.D.N.Y. 1997) .................................20

*In re Smith*, 926 F.2d 1027 (11th Cir. 1991) ...........................................................................19

*In re U.S. Oil & Gas Litig.,* 967 F.2d 489 (11th Cir. 1992)......................................................19

3

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)..........................................26

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001)..................................................27

*Jane Doe Nos. 1-4 v. Cin-Lan, Inc.*, No. 4:08-CV-12719 (E.D. Mich. June 15, 2011)..............25

*Kelley v. Norfolk & W. Ry. Co.*, 584 F.2d 34 (4th Cir. 1978)....................................................16

*Khait v. Whirlpool Corp.*, No. 06–6381 (ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)
.............................................................................................................................................12, 13

*Kilgo v. Bowman Trans.*, 789 F.2d 859 (11th Cir. 1986) .............................................................16

*Kubiak v. S.W. Cowboy, Inc.*, No. 3:12–cv–1306–J–34JRK, 2014 WL 2625181 (M.D. Fla. June
12, 2014) ......................................................................................................................................15

*Leverso v. SouthTrust Bank of Ala.*, 18 F.3d 1527 (11th Cir. 1994)............................................19

*Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65 (D.N.J. 1993)....................15

*Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421 (5th Cir. 1997).........................................17

*Lipnick v. Meritage Homes Corp.*, No. 3:10-CV-605, 2014 WL 923524 (S.D. Tex. Feb. 13,
2014) ............................................................................................................................................10

*Lopez v. Hayes Robertson Group, Inc.*, No. 13–10004–CIV, 2013 WL 10561294 (S.D. Fla.
Sept. 23, 2013) ............................................................................................................................15

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982)................................29

*Lyons v. Georgia–Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235 (11th Cir. 2000)
.......................................................................................................................................................18

*Mesa v. Ag-Mart Produce, Inc.*, No. 2:07-cv-47-FtM-34DNF, 2008 WL 2790224 (M.D. Fla.
July 18, 2008)..............................................................................................................................15

*Morefield v. NoteWorld, LLC*, No. 1:10–CV–00117, 2012 WL 1355573 (S.D. Ga. Apr. 18,
2012) ............................................................................................................................................15

*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999) .......................................17

*Napoles-Arcila v. Pero Family Farms, LLC*, No. 08–80779–CIV, 2009 WL 1585970 (S.D. Fla.
June 4, 2009)................................................................................................................................15

*Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360 (S.D. Fla. 2007) .................................................25

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993)........................................................................16

*Rosario-Guerrro v. Orange Blossom Harvesting*, 265 F.R.D. 619 (M.D. ..................................15

*Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683 (S.D. Fla. 2014) ...........................13

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs, Inc.*, 601 F.3d 1159 (11th
Cir. 2010).....................................................................................................................................18

*Sheppard v. Consol. Edison Co. of N.Y., Inc.*, No. 94–CV–0403(JG), 2002 WL 2003206
(E.D.N.Y. Aug. 1, 2002)..............................................................................................................28

*Spicer v. Chi. Bd. Options Exchange, Inc.*, 844 F. Supp. 1226 (N.D. Ill. 1993) ........................27

*Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3d Cir. 1990)........................................................24

*Su. v. Elec. Arts, Inc.*, No. 6:05-cv-131-Orl-28JGG, 2006 WL 4792780 (M.D. Fla. Sept. 20,
2006) ............................................................................................................................................28

*Torres v. Gristede's Operating Corp.*, No. 04–CV–3316 (PAC), 2010 WL 2572937 (S.D.N.Y.
June 1, 2010)................................................................................................................................19

*Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25,
2007) ............................................................................................................................................21

*Wal–Mart Stores, Inc. v. Visa, U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005)....................................20

4

*Waters v. Cook's Pest Control, Inc.*, No. 2:07–cv–00394–LSC, 2012 WL 2923542 (N.D. Ala. July 17, 2012)...................................................................................................................22

*Williams v. Mohawk Industries, Inc.,* 568 F.3d 1350 (11th Cir. 2009)........................................16

**Statutes**

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ........................................................................6

**Rules**

Fed. R. Civ. P. 23(c) .................................................................................................................24

Federal Rules of Civil Procedure 23(a), (b)(3) and (e) .......................................................passim

**Secondary Sources**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") §§ 11.22 *et seq.* (4th ed. 2002)…………………………………………………………………….....13, 19

## INTRODUCTION

Subject to Court approval, the parties have settled Plaintiffs' claims on a class-wide basis for significant monetary relief of $100,000.00. The proposed settlement satisfies all of the criteria for final approval under Rule 23 of the Federal Rules of Civil Procedure, as well as the criteria for approval under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). By the instant Motion, Plaintiffs now seek final approval of the Rule 23 Class, final approval of the settlement and approval of the service awards to the Named Plaintiff and Opt-In Plaintiffs in accordance with Section 4.4 of the Joint Stipulation of Class Action Settlement Agreement and Release ("Settlement Agreement"), attached as Exhibit "1" to D.E. 25 (Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure and Memorandum of Law in Support) ("Motion for Preliminary Approval").[1] The Parties' settlement of $100,000.00 satisfies all of the criteria for final approval, and not a single class member has submitted an objection to same. Thus, Plaintiffs respectfully request an order:

(1) finally approving the Settlement as fair, adequate and reasonable;

(2) certifying for settlement purposes only the Class[2] pursuant to Federal Rules of Civil

Procedure 23(a), (b)(3) and (e) and the collective action pursuant to the FLSA;

---

[1] Unless otherwise defined in the motion, defined terms as used herein are intended to have the same meaning as in the Settlement Agreement.

[2] "Class" means all individuals who worked as poker dealers at Hialeah Park Casino at any time during the period from July 1, 2013 to January 11, 2017. *See* D.E. 27, p. 4 (Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of

(3) appointing Named Plaintiff and Opt-In Plaintiffs as class representatives for this Settlement ("Settlement Class Representatives");

(4) appointing Chad E. Levy of the Law Offices of Levy & Levy, P.A. ("L&L") and Christopher J. Whitelock of Whitelock & Associates ("WA") as Class Counsel;

(5) approving service awards of $12,500 to Settlement Class Representative JENNIFER GONZALEZ, $12,500 to Settlement Class Representative AIDILIY MIZRACHI, and $5,000 to Settlement Class Representatives DAWN JORDAN (Named Plaintiffs);

(6) retaining continuing jurisdiction over Plaintiffs, the Class, and Defendant SOUTH FLORIDA RACING ASSOCIATION, LLC d/b/a HIALEAH PARK CASINO ("Hialeah Park") to enforce the Settlement Agreement and the Court's Order of Final Approval of Settlement;

(7) entering Final Judgment dismissing the Action with prejudice;

(8) declaring the same binding on all Participating Class Members, and permanently enjoining the Participating Class Members from pursuing any claims that are released by Section 5.1 of the Settlement Agreement; and

(9) entering the proposed Order of Final Approval of Settlement.[3]

On December 22, 2016, the Court took the first step in the settlement approval process when it granted preliminary approval of the settlement and directed that notice be mailed to Class Members.  *See* D.E. 27 (Order Granting Plaintiffs' Unopposed Motion for Preliminary

_____

the Proposed Notice of Settlement and Class Action Settlement Procedure); *see also* Settlement Agreement, ¶ 1.6.

[3] Plaintiffs' Counsel is separately filing Plaintiffs' Motion for Approval of Attorneys' Fees and Reimbursement of Expenses, and Incorporated Memorandum of Law in Support simultaneously with this Motion.

Approval of Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure). The Participating Class Members have now been notified of the terms of the settlement and their right to opt out of or object to it. As of the date of filing this Motion,[4] no class members have objected to the settlement, twenty-seven (27) class members have opted in (approximately 24%), and only two (2) class members have excluded themselves (approximately 1.8%). *See* Affidavit of Christopher J. Whitelock in Support of Plaintiffs' Motion for Final Approval of the Class Action Settlement, Approval of Service Awards, and Approval of Attorneys' Fees, and Reimbursement of Expenses, attached hereto as **EXHIBIT 1**. For the reasons stated below, the Court should grant final approval;

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

Plaintiffs allege that Defendant owns and/or operates a poker room at which the putative class members worked as poker dealers during the relevant class period (June of 2013 through January 11, 2017 (which was the date notice of this action was provided to all class members) (the "Class Period")). At all relevant times throughout the Class Period, Plaintiffs allege that the Defendant operated a noncompliant tip pool wherein tips were shared impermissibly with non-tipped employees thereby invalidating the tip pool, for purposing of calculating minimum wage, thus requiring the Plaintiffs and class members to receive the applicable minimum wage for all hours worked without regard to tips received under the FLSA and the Florida Minimum

---

[4] The deadline to object, to opt-out, or to submit a claim form was March 12, 2017.  *See* D.E. 27, ¶25(d).

Wage Act, Fla. Stat. § 448.110, *et seq.* ("FMWA").  *See* D.E. 27, p. 4, ¶ 8; Settlement Agreement, ¶ 2.20.

Defendant maintains that Plaintiffs were part of a lawful tip pool and that no tips were shared with non-tipped employees.  Specifically, the Defendant asserted and continues to assert that they have substantial defenses to Plaintiffs' claims, including that the Plaintiffs only shared tips with those employees that were properly tipped employees**.**

### B. **Procedural History**

The Named Plaintiffs filed an Amended Complaint of behalf of themselves and all other poker dealers who are or have been employed by Defendant and are similarly situated, alleging violations of the FLSA and the FMWA (the "Litigation").  *See* D.E. 19.  Thereafter, the Parties engaged in extensive discussions regarding resolution of this matter on a class-wide basis.  *See* Whitelock Aff. ¶ 12.

### C. **Discovery**

While the parties did not engage in formal discovery *per se*, Class Counsel has obtained, through their own investigation and from Defendant's informal, voluntary disclosures, information regarding the tip pool at issue and the legality of its implementation under both Federal and Florida law, as well as the information regarding the number of hours worked by poker dealers during the Class Period.  *See* Whitelock Aff. ¶ 13.  This includes the efforts taken by the Defendant to comply with the necessary requirements under the FLSA and FMWA.

### D. **Settlement Negotiations and Mediation**

Commencing on June 27, 2016, the Parties engaged in extensive resolution efforts as well as the review of pertinent documentation, and a legal analysis of the tip pool and associated

regulations.  *See* Whitelock Aff. ¶ 18.  After lengthy additional negotiations and further conferences, the Parties reduced their agreement to a formal Joint Stipulation of Class Action Settlement Agreement and Release, which this Court previously approved.  *See* D.E. 27. Plaintiffs, with Defendant's consent, now seek final approval of the Settlement Agreement.

## II.  <u>SUMMARY OF THE SETTLEMENT TERMS</u>

### A.  <u>The Settlement Fund</u>

Defendant has agreed to create a settlement fund of $100,000.00 ("the Fund").  *See* Settlement Agreement ¶ 4.1.1.  The Fund will cover awards to class members, Court-approved attorneys' fees and costs, and Court approved service payments to the Plaintiffs.  *Id.*.

### B.  <u>Release</u>

Participating Class Members who do not opt out of the settlement will release all Florida wage and hour claims that were brought in the litigation or that are based on the same facts and circumstances as the claims in the litigation.  *See* Settlement Agreement ¶ 5.1.  In addition to releasing their Florida wage and hour claims, all Class Members, including Plaintiffs, who timely submit a claim will release their FLSA claims, as well as their respective state wage and hour claims. *Id.*[5]

---

[5] Participating Class Members who do not timely submit a claim form will release their Florida wage and hour claims.  *See* Settlement Agreement, ¶ 5.1.  However, the parties do not agree with respect to whether Participating Class Members who do not timely submit a claim form will release their FLSA claims.  Plaintiffs assert that such Participating Class Members FLSA claims are not released.  Defendant has cited authority arguing that such Participating Class Members FLSA claims are released.  *See, e.g., Lipnick v. Meritage Homes Corp.,* No. 3:10-CV-605, 2014 WL 923524 (S.D. Tex. Feb. 13, 2014).  Rather than allow this disagreement over a point of law prevent a settlement, the Settlement Agreement provides that Defendant expressly reserves the right to contend in future proceedings that such Participating Class Members are barred from pursuing FLSA claims against the Defendant based on workweeks which occurred during the Claim Period covered by the Settlement Agreement, and such Participating Class

### C. **Eligible Class Members**

The Motion for Preliminary Approval of the Class estimated that the Rule 23 class consisted of approximately 100 current and former dealers who worked at Hialeah Park Casino between the opening of the Defendant's facility in June of 2013 and the date that notice is provided to the class members (January 11, 2017), except for those who opt out. See Settlement Agreement; *see also* D.E. 25(II)(C). Upon Defendant's further investigation, it was discovered that there were a total of one hundred fourteen (114) current and former poker dealers that were employed by the Defendant's during the above time period.

Of the one hundred fourteen (114) poker dealers who were mailed notice, twenty-seven (27) valid claim forms were received, which constitutes approximately 24% of the class. *See* Whitelock Aff. ¶ 23. Class members who submitted completed claim forms will release both FLSA and their Florida wage and hour claims. *See* Settlement Agreement, ¶ 5.1.

### D. **Allocation Formula**

Class members who timely submitted complete claim forms consent to join the FLSA class, will be paid pursuant to an allocation formula based on the number of hours they worked for the Defendant during the applicable limitations periods in relation to the total number of hours worked during the Class Period by all class members who timely submit claim forms. *See* Settlement Agreement, ¶ 4.5.

Here, approximately 24% (27 out of 114) of those mailed the Notice of Settlement Action, Claim Form, and Opt-Out Form have submitted valid claims; approximately 1.8% (2

---

Members expressly reserve their right to oppose said contention by the Defendant. *See* Settlement Agreement.

out of 114) have opted out; and none have objected.   *See* Whitelock Aff. ¶ 26.   This demonstrates an overall positive response to the settlement.

**E.   Service Payments.**

In addition to their individual awards under the allocation formula, Plaintiffs, all of whom actively participated in the Litigation, will apply for additional payments in recognition of the services they rendered on behalf of the class ("Service Payments").   *See* Settlement Agreement, ¶ 4.4.   Such service awards "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff."   *Khait v. Whirlpool Corp.*, No. 06–6381 (ALC), 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (citations omitted); *Allapattah Servs., Inc. v. Exxon Corp.,* 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006) (Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.").   Also, as part of the settlement, each of the Plaintiffs delivered comprehensive General Releases to Defendant. Like the application for attorneys' fees, the Settlement Agreement is not conditioned on the award of the Service Payments.   *See* Settlement Agreement, ¶ 4.4.

Like the application for attorneys' fees, the Settlement Agreement is not conditioned on the award of the service payments.   *See* Settlement Agreement, ¶ 4.4.   However, each of these plaintiffs expended time and took risks to bring the action on behalf of the class.   Plaintiffs therefore respectfully submit that these relatively modest service awards are fair and appropriate in this case. *See* Whitelock Aff. ¶ 37.

## III. SETTLEMENT CLAIMS ADMINISTRATION

Courts have established a defined procedure and specific criteria for settlement approval in class action settlements that include three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2. Dissemination of mailed and/or published notice of settlement to all affected class members; and

3. A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See Henry v. Little Mint, Inc.,* No. 12 CIV. 3996 CM, 2014 WL 2199427, at *5 (S.D.N.Y. May 23, 2014) (citing Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") §§ 11.22 *et seq.* (4th ed. 2002)); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 688 (S.D. Fla. 2014) (discussing steps), *appeal dismissed* (Oct. 15, 2014); *Khait*, 2010 WL 2025106, at *1-2. This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.

On December 22, 2016, the Court granted the Plaintiffs' Motion for Preliminary Approval of Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure. *See* D.E. 27. The Notice of Settlement of Class Action, Claim Form, and Opt-Out Form were mailed to 114 poker dealers on January 11, 2017. *See* Whitelock Aff. ¶ 34.

With this motion, Plaintiffs request that the Court grant final approval of the Settlement Agreement.  The parties respectfully submit for the Court's approval the following schedule for final resolution of this matter:

1. After the fairness hearing, currently scheduled for May 10, 2017, if the Court grants Plaintiffs' Motion for Final Settlement Approval, the Court will issue a Final Order and Judgment.  If no party appeals the Court's Final Order and Judgment, the "Effective Date" of the settlement will be 30 days after the Court enters its Final Order and Judgment.  *See* Settlement Agreement, ¶ 2.12.

2. If an individual or party appeals the Court's Final Order and Judgment, the "Effective Date" of Settlement shall be the day after all appeals are finally resolved in favor of final approval and the time for any further appeal, rehearing, or reconsideration has expired.[6]  *See* Settlement Agreement, ¶ 2.12.

3. Defendant shall pay the total amount of the Qualified Class Members' claims, and Class Counsel's fees and costs in the amount of $100,000 based upon the allocation formula set forth and approved by the Court. *See* Settlement Agreement, ¶ 4.1.1, 4.1.2.

4. Defendant shall pay the Net Settlement Payment to Class Counsel within thirty (30) days after the Effective Date.  *See* Settlement Agreement, ¶ 4.2.

## IV. ARGUMENT

### A.     The Settlement Class Meets the Legal Standard for Class Certification.

"Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits."  *In re Nissan Motor Corp. Antitrust Litiq.,* 552 F.2d 1088, 1105 (5th Cir. 1977) (citation omitted).  Before a class settlement may be approved, however, a number of prerequisites must be established.  First, the Court must certify the settlement class.  Fed. R. Civ. P. 23(c).  Second, the Court must determine whether the settlement is fair and adequate.

---

[6] No appeal is anticipated as the parties have agreed to final approval of the class settlement and no class member timely objected to final approval of same.

14

*See In re Checking Account Overdraft Litiq.,* 830 F. Supp. 2d 1330, 1340 (S.D. Fla. 2011); Fed. R. Civ. P. 23(e)(1)-(2).

To certify a class for settlement purposes the Court must determine whether the prescriptions of Federal Rule of Civil Procedure 23 are satisfied. *See Morefield v. NoteWorld, LLC*, No. 1:10–CV–00117, 2012 WL 1355573, at *2 (S.D. Ga. Apr. 18, 2012). Specifically, certification requires that each of the four factors set out in Rule 23(a) are satisfied, along with at least one of the conditions under Rule 23(b). *Id.* Here, the settlement class satisfies the requisite Rule 23 factors detailed below.[7] Thus, the Court should certify the settlement class.

### 1. Numerosity

"Numerosity" speaks to the practicability of joining all members in the litigation in lieu of implementing the class action procedure. *See* Fed. R. Civ. P. 23(a)(1). It frequently is said that attending circumstances dictate the existence of "numerosity," rather than the mere satisfaction of some arbitrarily numeric formulae. *See, e.g., Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980); *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65, 73 (D.N.J.

---

[7] This is not an issue of first impression. Rather federal courts throughout Florida regularly grant class certification of wage and hour claims under Florida state law. *See, e.g., Encarnacion v. J.W. Lee, Inc.*, No. 14-CIV-61927-DIMITROULEAS (S.D. Fla. Oct. 22, 2015), ECF No. 65 at 4-5 (Dimitrouleas, J.) (conditionally certifying Rule 23 class/FLSA collective action settlement for alleged violations of the FLSA, FMWA, and the Ohio Minimum Fair Wage Standards Act); *Kubiak v. S.W. Cowboy, Inc.,* No. 3:12–cv–1306–J–34JRK, 2014 WL 2625181 (M.D. Fla. June 12, 2014) (certifying opt-out Rule 23 class for FLMWA claims); *Lopez v. Hayes Robertson Group, Inc.,* No. 13–10004–CIV, 2013 WL 10561294 (S.D. Fla. Sept. 23, 2013) (certifying opt-out Rule 23 class of FMWA claims regarding allegations of an illegal tip pool); *Garcia-Celestino v. Ruiz Harvesting, Inc*., 280 F.R.D. 640 (M.D. Fla. 2012) (Moody, J.) (certifying Florida state wage and hour claims); *Napoles-Arcila v. Pero Family Farms, LLC*, No. 08–80779–CIV, 2009 WL 1585970 (S.D. Fla. June 4, 2009) (same); *Mesa v. Ag-Mart Produce, Inc*., No. 2:07-cv-47-FtM-34DNF, 2008 WL 2790224 (M.D. Fla. July 18, 2008) (Howard, J.) (same);*Rosario-Guerrro v. Orange Blossom Harvesting*, 265 F.R.D. 619 (M.D. Fla. 2010) (Steele, J.) (same). Class certification is appropriate even in cases where certification of an opt-in collective action is denied.

1993) (considering the totality of facts when applying Rule 23(a)(1)).  Thus, as the Rule itself suggests, the "numerous" character of any action turns upon concepts of general unwieldiness, not size alone.  *See, e.g., Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993) ("Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement … Determination of practicability depends on all the circumstances surrounding a case, not on mere numbers.  Relevant considerations include judicial economy arising from the avoidance of multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members.") (citations omitted); *Kelley v. Norfolk & W. Ry. Co.*, 584 F.2d 34, 35-36 (4th Cir. 1978) (courts focus on both qualitative and quantitative considerations).

Here, 114 poker dealers were sent notice as members of the proposed settlement class.  *See* Whitelock Aff. ¶ 23.  For a variety of reasons, their joinder is impracticable.  Thus, the Rule 23(a)(1) numerosity requirement is met.  *See Kilgo v. Bowman Trans.,* 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members).

### 2.   Commonality

The threshold for commonality under Rule 23(a)(2) is not high.   "[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members."  *Williams v. Mohawk Industries, Inc.,* 568 F.3d 1350, 1355 (11th Cir. 2009) (internal quotation marks omitted); *see also Fabricant v. Sears Roebuck,* 202 F.R.D. 310, 313 (S.D. Fla. 2001) (same).  Here, the commonality requirement is satisfied for purposes of settlement because there are multiple questions of law and fact that center on

16

Defendant's class-wide pay policies and practices pertaining to poker dealers—specifically the uniform tip-pool requirements by the Defendant, and alleged failure to pay minimum wages—and are common to the settlement class.

### 3. Typicality

In a similar fashion, Rule 23(a)'s "typicality" requirement "focuses on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999); *Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997) (citation omitted).

Plaintiffs' claims are typical of the settlement class for purposes of this settlement because they concern the same alleged pay policies and practices of Defendants, arise from the same legal theories, and allege the same types of harm and entitlement to relief.  Therefore, Rule 23(a)(3) is satisfied.  *See Komberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander,* 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").

### 4. Adequacy

Adequacy under Rule 23(a)(4) relates to: (1) whether the proposed class representatives have interests antagonistic to the settlement class; and (2) whether the proposed class counsel has the competence to undertake the litigation at issue. *See Fabricant,* 202 F.R.D. at 314.  Rule 23(a)(4) is satisfied here because there are no conflicts of interest between the Representative

17

Plaintiffs and the settlement class, and Plaintiffs have retained competent counsel to represent them and the settlement class.  Class Counsel here regularly engages in wage and hour litigation and other complex litigation similar to the present Litigation, and has dedicated substantial resources to the prosecution of the Action.  *See* Whitelock Aff. ¶ 27.  Moreover, the Plaintiffs and Class Counsel have vigorously and competently represented the settlement Class Members' interests in the Litigation.  *See Lyons v. Georgia–Pacific Corp. Salaried Employees Ret. Plan,* 221 F.3d 1235, 1253 (11th Cir. 2000).

### 5.  Predominance and Superiority

Rule 23(b)(3) is satisfied for settlement purposes as well because the common legal and alleged factual issues here predominate over individualized issues, and resolution of the common issues for 114 Class Members in a single, coordinated proceeding is superior to 114 individual lawsuits addressing the same legal and factual issues.  With respect to predominance, Rule 23(b)(3) requires that "[c]ommon issues of fact and law ... ha[ve] a *direct impact* on every class member's effort to establish liability *that is more substantial than the impact of individualized issues* in resolving the claim or claims of each class member."  *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs, Inc.,* 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted) (emphasis in original).  Here, the predominance requirement is satisfied for settlement purposes because common questions present a significant aspect of the case and can be resolved for all settlement Class Members in a single common judgment.  *See In re Checking Account Overdraft Litigation,* No. 1:09–MD–02036–JLK, 2012 WL 4173458, at *3 (S.D. Fla. Sept. 19, 2012).  In sum, all of Rule 23's requirements are met for

the purposes of certifying a settlement class. Thus, the Court should finally certify the settlement class.

**B. The Proposed Settlement is fair, reasonable, and adequate, and should be approved.**

Federal Rule of Civil Procedure 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such a manner as the court directs." While Rule 23(e) does not provide any standards or guidelines for settlement approval, it is well-established in this Circuit that "in order to approve a settlement, the district court must find that it 'is fair, adequate and reasonable and is not the product of collusion between the parties.'" *Bennet v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

The law favors compromise and settlement of class action suits. *See In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir. 1992) (noting that "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits."); 4 *Newberg* § 11.25 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."); *In re Smith*, 926 F.2d 1027, 1029 (11th Cir. 1991) ("Settlement is generally favored because it conserves scarce judicial resources."). The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Leverso v. SouthTrust Bank of Ala.,* 18 F.3d 1527, 1531 (11th Cir. 1994). In exercising their discretion, courts should give "proper deference to the private consensual decision of the parties." *Torres v. Gristede's Operating Corp.*, No. 04–CV–3316 (PAC), 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010) (internal quotation marks and citations omitted).

19

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005) (citing *Wal–Mart Stores, Inc. v. Visa, U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted). "[A] court, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Canupp v. Liberty Behavioral Healthcare, Corp.,* 447 F. App'x 976, 978 (11th Cir. 2011) (quoting *Cotton,* 559 F.2d at 1330).

**1. The Settlement is Fair, Reasonable, and Adequate**

In evaluating a class action settlement, courts in the Eleventh Circuit consider the six factors set forth in *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984). The *Bennett* factors are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense, and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *See id.* Here, all of the *Bennett* factors weigh in favor of approval of the Settlement Agreement, and therefore, the Court should approve the Settlement Agreement.

**a. <u>The Likelihood of Success at Trial</u>**

Although Plaintiffs believe their case is strong, it is not without risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the

merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 177 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) (internal quotation marks omitted).

A trial on the merits would involve significant risk as to both liability and damages, as the Defendant asserted numerous substantive and procedural defenses. For example, Defendant presented evidence on which a finder of fact could ultimately have relied in finding the tip pool was valid. Specifically, adjustments and classifications were made to the operation of the tip pool in an attempt to ensure compliance with the FLSA and FMWA, certain of which were made as a result of a lawsuit filed against the Defendant in the case of <u>Baez v. Hialeah Park</u>, CASE NO. 1:14-cv-20156, filed in the United States Southern District of Florida during January 2014, setting forth the same allegations raised in this matter. While Defendant maintained that the tip-pool was operated in accordance with law at all times, for pragmatic reasons the <u>Baez</u> case was resolved in April of 2014, prompting the Defendant to ensure and verify its compliance with the FLSA and FMWA to prevent further lawsuits. In doing so, the Defendant clarified the job responsibilities of all employees that were eligible to participate in the tip-pool to ensure they all qualified as tipped employees, which ultimately ensured that any employee that was receiving tips from the tip-pool in which the Putative Class participated received at least $30.00 per month in tips as is required pursuant to 29 USC 203(t) and 29 CFR

531.51.  By doing so, the Defendant ensured its compliance with the requirements of the FLSA and the FMWA by having the Putative Class sharing their tips only with other tipped employees. *See* Settlement Agreement, ¶3.

While Plaintiffs believe that they may have ultimately defeated each of Defendant's aforementioned arguments, this would require significant factual development and favorable outcomes at trial and on appeal, all of which is inherently uncertain and lengthy.  The proposed settlement alleviates this uncertainty.  This factor weighs in favor of final approval.

### b.  <u>Range of Possible Recovery and Range at Which Settlement is Fair</u>

The relief sought in the settlement is reasonable and within the range of remedies permitted by law.  Under the Settlement Agreement, each Class Member is eligible to receive a proportion of his/her alleged minimum wage deficiency (the difference between the Florida Minimum Wage and the amount paid to the Putative Class pursuant to the tip-credit rate), by multiplying this difference by the total number of hours worked by members of the Putative Class during the Claim Period (this sum referred to as the "Potential Claim Amount"). Defendant has agreed to pay approximately 47.5% of the Potential Claim Amount in settlement of the Putative Class claims based upon the Defendant's continued position that the tip-pool was valid before, during, and after the Claim Period.  *See* Settlement Agreement, ¶6.

"While Class Members' damages could exceed the amount provided in the Settlement, the Plaintiffs have no guarantee they will prevail." *Waters v. Cook's Pest Control, Inc*., No. 2:07–cv–00394–LSC, 2012 WL 2923542, at *13 (N.D. Ala. July 17, 2012); *see also Behrens v. Wometco Enters., Inc*., 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential

recovery."); *In re Newbridge Networks Securities Litig.*, No. CIV. A. 94–1678–LFO, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("an agreement that secures roughly six to twelve percent of a *potential* trial recovery ... seems to be within the targeted range of reasonableness").

When the Settlement here is taken as a whole, the relief proposed is fair, adequate, and reasonable considering Plaintiffs reached the near mid-point of recovery (47.5%).

### c. <u>Litigation Through Trial Would Be Complex, Costly, and Long</u>

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay and ensure a speedy, risk-free recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 174. This case is no exception, with approximately 313 Rule 23 class members and claims under federal and state law.

Although there has been some informal discovery already, additional discovery would be required to establish liability and damages, including depositions of Class Members, and Defendant's employees and managers. Further, Defendant would have opposed certification of the Rule 23 class and any FLSA collective action, had the matter not resolved, and sought to decertify same, even in the event that the Court ultimately certified a Rule 23 class.

In addition, the parties likely would have filed cross-motions for summary judgment on the legal issues regarding the legality of Defendant's tip-pool validation. If the Court denied the motions, a fact-intensive trial would be necessary to determine whether Plaintiffs and the Class Members were paid in compliance with the FLSA and FMWA. Preparing for and putting on evidence at such a trial would consume tremendous amounts of time and resources and demand

substantial judicial resources.  Given the unsettled nature of the law at issue in the case, any judgment would likely be appealed, extending the duration of the litigation.  The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner.  Therefore, the third *Bennett* factor weighs in favor of approval.

### d.  <u>The Reaction to the Settlement Has Been Favorable and In Accord with Similar Cases</u>

The claims, objection and opt out period closed on March 12, 2017.  Significantly, of the total 114 Class Members to whom the Notice was mailed, no Class Member has objected to the settlement and only 2 have opted out.  *See* Whitelock Aff. ¶ 26.  Thus, the total opt out rate is only approximately 1.8%.  This opt-out rate is very low, and no objectors demonstrate a favorable settlement.  *See Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677-CIV, 2008 WL 649124, at *12 (S.D. Fla. 2008) ("A low percentage of objections will confirm the reasonableness of a settlement and support its approval.") (citing *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990), wherein fact that only about 10% of class members object to settlement weighed in favor of approval); *Browne v. Am. Honda Motor Co.*, No. CV 09–06750 MMM (DTBx), 2010 WL 9499072, at *15 (C.D. Cal. 2010) (where approximately 5% of class members submitted claims and under 1% opted out or objected, "[t]he comparatively low number of opt-outs and objectors indicates that generally, class members favor the proposed settlement and find it fair."); *Briggs v. Hartford Fin. Servs. Grp., Inc.*, No. 07–CV–5190, 2009 WL 2370061, at *11 (E.D. Pa. July 31, 2009) ("Put otherwise, less than 2.7% of the class opted out.  It is therefore fair to infer that a vast majority—over 97%—of the class supports the Agreement.").

Additionally, 27, or about 24 %, of those whom Notices were mailed have submitted valid claims.  *See* Whitelock Aff. ¶ 26.  This claims rate is higher than the rate in similar matters involving wage and hour claims.  *See, e.g., Encarnacion v. J.W. Lee, Inc. d/b/a Scarlett's Cabaret,* No. 14-CIV-61927-DIMITROULEAS (S.D. Fla. 2015) ECF No. 87, p. 5 (final order and judgment granting motion for final approval of class action settlement where 7.3% of  the class members mailed notice packets submitted valid claims); *Jane Doe Nos. 1-4 v. Cin-Lan, Inc.*, No. 4:08-CV-12719 (E.D. Mich. June 15, 2011) (approving class settlement where approximately 4.93% of the eligible class members opted in).  This claims rate also comports with federal court's consistent approval of settlements with similar claims rates in other contexts under Rule 23.  *See, e.g., Hall v. Bank of America, N.A.*, No. 1:12–cv–22700–FAM, 2014 WL 7184039, at *8 (S.D. Fla. Dec. 17, 2014) (Moreno, J.) (approving settlement absent final claims data because the number of claims is "not a relevant factor in evaluating the fairness, reasonableness, or adequacy of the settlement); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007) (Seitz, J.) (approving settlement in which approximately 1.1% of class members returned claim forms); *see also Date v. Sony Electronics, Inc.*, No. 07–15474, 2013 WL 3945981, at *9-10 (E.D. Mich. July 31, 2013) (approving settlement with 4% claims made rate); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, MDL No. 1532, 2011 WL 1398485, at *3 (D. Me. Apr. 13, 2011) (finding favorable class reaction with approximately 3.9% response rate).

### e.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly

The parties have completed enough discovery to recommend settlement.  "To approve a proposed settlement, the Court need not find that the parties have engaged in extensive

discovery.  Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make … an appraisal' of the Settlement."  *See In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d at 176 (citations omitted); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (the proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating") (internal quotation marks omitted).   "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement ... but an aggressive effort to ferret out facts helpful to the prosecution of the suit."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted).   The parties' discovery here meets this standard.

As discussed above, the Plaintiffs have obtained, through their own investigation and from Defendant's voluntary disclosures, information regarding the manner in which the tip-pool has been operated over time, the relevant policies and procedures of Defendant, payroll records regarding the number of hours worked during the class period, and adjustments and classifications made to the operation of the tip pool to ensure compliance with the FLSA and FMWA.  *See* Settlement Agreement, ¶3.  In addition, Plaintiffs' Counsel has interviewed Plaintiffs, who joined prior to the filing of Plaintiffs' Motion for Preliminary Approval of Settlement, D.E. 25, and other poker dealers regarding the tip-pool and minimum wage deficiency claims at issue here.

Based on these circumstances, the Parties were well equipped to evaluate the strengths and weaknesses of the case.  *See Encarnacion v. J.W. Lee, Inc.*, No. 14-CIV-61927-

DIMITROULEAS (S.D. Fla. Oct. 22, 2015), ECF No. 87 at 6 (finally approving settlement in wage hour class litigation prior to the parties engaging in formal discovery).

### 2. The Service Awards Are Reasonable and Should Be Awarded

The Settlement Agreement proposes that the settlement Class Representative Plaintiffs be awarded the following Service Payments: $12,500.00 each will be awarded to Gonzalez and Mizrachi. Gonzalez has also asserted an employment claim against Hialeah Park with the US EEOC, and Mizrachi notified Hialeah Park of her intention of doing so. These employment claims are being released as part of this settlement; and $5,000.00 to Jordan for her share of the Service Awards. The Service Awards are in recognition of the Class Representatives Plaintiffs' active participation in this action and service to the settlement Class, as well as the risks they undertook for the benefit of the Class. *See* Whitelock Aff. ¶ 39. These service awards are in addition to the awards each of the Class Representative Plaintiffs are to receive pursuant to the formula applicable to all class members. *See* Settlement Agreement, ¶4.4.

"[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action. *David v. Am. Suzuki Motor Corp.*, No. 08–CV–22278, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010). Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives. *See, e.g., Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding class representatives $300,000 each, explaining that "the magnitude of the relief that Class Representatives obtained on behalf of the class warrants a substantial incentive award."); *Spicer v. Chi. Bd. Options Exchange, Inc.*, 844 F. Supp. 1226,

1266-68 (N.D. Ill. 1993) (collecting cases approving service awards ranging from $5,000 to $100,000, and awarding $10,000 to each named plaintiff).

"While the Eleventh Circuit has not expressly set forth guidelines for courts to use in determining incentive awards, there is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action.  In fact, "[c]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."  *Allapattah Servs.,* 454 F. Supp. 2d at 1218 (quotation omitted); *see also Su. v. Elec. Arts, Inc.*, No. 6:05-cv-131-Orl-28JGG, 2006 WL 4792780, at *1, 5 (M.D. Fla. Sept. 20, 2006) (unpublished); *Sheppard v. Consol. Edison Co. of N.Y., Inc.*, No. 94–CV–0403(JG), 2002 WL 2003206, at *6 (E.D.N.Y. Aug. 1, 2002) (unpublished) (collecting cases).  "Such awards are justified when the class representatives expend considerable time and effort on the case, especially by advising counsel, or when the representatives risk retaliation as a result of their participation."  *Ingram*, 200 F.R.D. at 694.

Given the amount of time and effort put forth by the settlement Class Representatives, who initially brought this action, directed counsel, and participated in the negotiations which resulted in this Settlement, and the inherent risks taken by each of them, and upon consideration of the amount proposed, the Service Awards are reasonable and should be awarded.  *See* Whitelock Aff. ¶ 39.

**C.  Approval of the FLSA Settlement is Appropriate under Federal Law**

Plaintiffs also request that the Court approve the settlement of the FLSA claims of those Rule 23 Class Members who opted in to the case and/or submitted a claim form.  Unlike the

procedure under Rule 23, collective members generally must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). Accordingly, the higher standard for approval of a class action under Rule 23 does not apply to an FLSA settlement.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 n. 8 (11th Cir. 1982); *Diaz v. E. Locating Serv. Inc.,* No. 10 Civ. 4082, 2010 WL 5507912, at *6 (S.D.N.Y. Nov. 29, 2012); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 00440, 2010 WL 3322580, at *7 (S.D.N.Y. Aug. 23, 2010). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. In this case, the settlement was the result of litigation and arm's length negotiation involving vigorous back and forth. *See* Whitelock Aff. ¶ 18. During the litigation and during settlement discussions, Plaintiffs and Defendant were represented by counsel experienced in wage and hour law. Because the Settlement Agreement resolves a clear and actual dispute waged in contested litigation and resolved through arm's length settlement negotiation, it should be finally approved.

## V. <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) finally approve the Settlement as fair, adequate and reasonable; (2) certify for settlement purposes only

the Class[8] pursuant to Federal Rules of Civil Procedure 23(a), (b)(3) and (e) and the collective action pursuant to the FLSA; (3) appoint Dawn Jordan, Jennifer Gonzalez, and Aidily Mizrachi (Named Plaintiffs) as class representatives for this Settlement ("Settlement Class Representatives"); (4) appoint Chad E. Levy of the Law Offices of Levy & Levy, P.A. ("L&L") and Christopher J. Whitelock of Whitelock & Associates, P.A. ("WA") as Class Counsel; (5) approve a service award of $12,500 to Settlement Class Representatives Jennifer Gonzalez, and Aidily Mizrachi, and approve a service awards of $5,000 to Settlement Class Representative Dawn Jordan; (6) retain continuing jurisdiction over Plaintiffs, the Class, and Defendant to enforce the Settlement Agreement and the Court's Order of Final Approval of Settlement; (7) enter Final Judgment dismissing the Action with prejudice; (8) declaring the same binding on all Participating Class Members, and permanently enjoining the Participating Class Members from pursuing any claims that are released by Section 5.1 of the Settlement Agreement; and (9) enter the proposed Order of Final Approval of Settlement.

---

[8] Class" means all individuals who worked as poker dealers at Hialeah Park Casino at any time during the period from July 1, 2013 to January 11, 2017. *See* D.E. 27, p. 4 (Order  Granting Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure); *see also* Settlement Agreement, ¶ 1.6.

Dated: April 26, 2017.                                    Respectfully submitted,


**LAW OFFICES LEVY & LEVY, P.A**.                **WHITELOCK & ASSOC., P.A.**
1000 Sawgrass Corporate Parkway, Suite 588        300 Southeast 13th Street
Sunrise, Florida 33323                            Fort Lauderdale, FL  33301
Telephone: (954) 763-5722                         Telephone:  954.463.2001
Facsimile:  (954) 763-5723                        Facsimile: 954.463.0410

*/s/  Chad E. Levy*                               */s/ Christopher J. Whitellock*
Chad E. Levy, Esq.                                Christopher J. Whitelock
Florida Bar No.: 851701                           Florida Bar No.:  67539
chad@levylevylaw.com                              cjw@whitelocklegal.com

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that Plaintiffs' counsel conferred with Defendant's Counsel, who is unopposed to the filing of this Motion.  The undersigned furnished to Defendant's Counsel a draft of this Motion prior to filing, along with exhibits, and he consented to same.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 26, 2017, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

*/s/ Chad E. Levy*_____
CHAD E. LEVY

31

## <u>SERVICE LIST</u>

Christopher John Whitelock, Esq.
Whitelock & Associates
300 Southeast 13th Street
Fort Lauderdale, FL 33316-1154
Telephone: 954-463-2001
Facsimile: 954-463-0410
cjw@whitelocklegal.com
*Co-Counsel for Plaintiff*


Andrew Lavin, Esq.
Lavin Law Group
2670 NE 215 Street
Miami, Florida 33180
alavin@lavinlawyers.com
*Counsel for Defendant*