UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 1:16-CV-21893

DAWN JORDAN, JENNIFER GONZALEZ, and
AIDILIY MIZRACHI, on behalf of themselves
and all others similarly situated,

        Plaintiffs,

vs.

SOUTH FLORIDA RACING ASSOCIATION, LLC
d/b/a HIALEAH PARK CASINO, A Florida limited
liability company,

        Defendant.
_____/

## PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

Submitted by:

| | |
|---|---|
| **LAW OFFICES LEVY & LEVY, P.A**. | **WHITELOCK & ASSOC., P.A.** |
| 1000 Sawgrass Corporate Parkway, Suite 588 | 300 Southeast 13th Street |
| Sunrise, Florida 33323 | Fort Lauderdale, FL  33301 |
| Telephone: (954) 763-5722 | Telephone:  954.463.2001 |
| Facsimile:  (954) 763-5723 | Facsimile: 954.463.0410 |
| | |
| */s/   Chad E. Levy* | */s/ Christopher J. Whitellock* |
| Chad E. Levy, Esq. | Christopher J. Whitelock |
| Florida Bar No.: 851701 | Florida Bar No.:  67539 |
| chad@levylevylaw.com | cjw@whitelocklegal.com |

*Attorneys for Plaintiffs and the Settlement Class*

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..................................................................................................1

II.    LEGAL AUTHORITY .........................................................................................3

   A.  Class Counsel Is Entitled to a Reasonable Fee of Thirty-Three Percent (33.0%) of the Settlement Payment ............................................................................................................3

      1.   The Eleventh Circuit Dictates that Class Counsel's Fees Should Be Awarded From the Common Fund Created Through Class Counsel's Efforts ...................................................3

      2.   The *Camden I* Factors Support an Award of 33.0 Percent of the Settlement Payment ..5

         a.   Time and Labor Involved .........................................................................................7

         b.   The Issues Involved Were Novel and Difficult and Required the Skill of a Highly Talented Team of Attorneys ........................................................................................9

         c.   The Claims Against Defendants Entailed Considerable Risk ...................................10

         d.   Class Counsel Assumed Substantial Risk to Pursue This Action on a Pure Contingency Basis, and Were Precluded From Other Employment as a Result ............12

         e.   The Requested Fee Comports With Customary Fees Awarded in Similar Cases .....13

         f.   The Remaining *Camden I* Factors Also Favor Approving Class Counsel's Fee Request........................................................................................................................14

III.   CONCLUSION...................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006)..........................14

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001). .............................9

*Atkinson v. Wal-Mart Stres, Inc.*, No. 8:08–CV–691–T–30TBM, 2011 WL 6846747 (M.D. Fla. Dec. 29, 2011)...................................................................................................................2, 14

*Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981) ...........................................9

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988)....................................12, 13

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980).........................................................................3

*Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).............................passim

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977).......................................................................9

*David v. Am. Suzuki Motor Corp.*, No. 08–CV–22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) ..................................................................................................................................5

*de Munecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010)…...........................................................................................................................8

*Encarnacion v. J.W. Lee, Inc.,* No. 14-CIV-61927-DIMITROULEAS (S.D. Fla. Oct. 22, 2015), ....................................................................................................................................2, 14

*Fabricant v. Sears Roebuck & Co.*, No. 98–1281–Civ, 2002 WL 34477904 (S.D. Fla. Sept. 18, 2002) ..................................................................................................................................5

*Fla. Trailer and Equip. Co. v. Deal*, 284 F.2d 567 (5th Cir. 1960)............................................10

*Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677-CIV, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008).................................................................................................................11

*Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452(RLE), 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) .............................................................................................................................2

*Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000)...........................................4

*Gutter v. E.I. DuPont De Nemours & Co.*, No. 1:95-cv-02152-ASG, D.E. 626 (S.D. Fla. May 30, 2003) .........................................................................................................................2, 14

*Hosier v. Mattress Firm, Inc.*, No. 3:10–cv–294–J–32JRK, 2012 WL 2813960 (M.D. Fla. June 8, 2012) ........................................................................................................................2, 13

*In re Checking Account Overdraft Litigation,* 830 F. Supp. 2d 1330, 1358 (S.D. Fla. 2011)… ...............................................................................................................................passim

*In re Corrugated Container Antitrust Litig.,* 643 F.2d 195 (5th Cir. 1981) ..............................10

*In re Gould Sec. Litig.*, 727 F. Supp. 1201 (N.D. Ill. 1989) .......................................................3

*In re Managed Care Litig. V. Aetna,* MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) ...............................................................................................................................14

*In re Quantum Health Resources, Inc.*, 962 F. Supp. 1254 (C.D. Cal. 1997) .............................4

*In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001)............................passim

*In re Terazosin Hydrocholoride Antitrust Litig.,* No. 1:99-md-01317-PAS, Doc. No. 1557 (S.D. Fla. Apr. 19, 2005)...........................................................................................................2, 14

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). ...............................6

*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970) .................................................................3

*Morefield v. NoteWorld, LLC*, Nos. 1:10–CV–00117, 1:11–CV–00029, 2012 WL 1355573 (S.D. Ga. Apr. 18, 2012)..................................................................................................2, 13

*Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) .................................................................................................................. 8

*Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334 (S.D. Fla. 2007) .................................... 11

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974) ............................................ 3

*Ressler v. Jacobson*, 149 F.R.D. 651(M.D. Fla. 1992) .................................................... 10, 11, 12

*Sands Point Partners, L.P. v. Pediatrix Med. Group, Inc.*, No. 99-6181-CIV, 2002 WL 34343944 (S.D. Fla. May 3, 2002) ............................................................................................ 5

*Seghroughni v. Advantus Rest. Inc.,* No. 8:12–cv–2000–T–23TBM, 2015 WL 2255278 (M.D. Fla. May 13, 2015) ................................................................................................................ 1, 13

*Skelton v. General Motors Corp.,* 860 F.2d 250 (7th Cir. 1988), *cert. denied*, 493 U.S. 810 (1989) ........................................................................................................................................ 11

*Stahl v. MasTec, Inc.*, No. 8:05-CV-1265-T-27TGW, 2008 WL 2267469 (M.D. Fla. May 20, 2008) ........................................................................................................................................... 5

*Walco Invs., Inc. v. Thenen*, 975 F. Supp. 1468 (S.D. Fla. 1997) .................................... 7, 10, 11

*Walters v. Atlanta*, 652 F. Supp. 755 (N.D. Ga. 1985) ................................................................ 12

*Waters v. Cook's Pest Control, Inc.*, No. 2:07–cv–00394–LSC, 2012 WL 2923542 (N.D. Ala. July 17, 2012) .............................................................................................................................. 2

*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) ..................................... 1

*Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997) .................................... 4

*Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143(ENV)(RER), 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) .................................................................................................................................... 1, 13

*Wolff v. Cash 4 Titles*, No. 03–22778–CIV, 2012 WL 5290155 (S.D Fla. Sept. 26, 2012) .... 1, 13

*York v. Ala. State Bd. of Educ.*, 631 F. Supp. 78 (M.D. Ala. 1986) ............................................ 12

**Statutes**
29 U.S.C. § 216(b) ........................................................................................................................ 9

**Rules**
Federal Rule of Civil Procedure 23 ............................................................................................... 9

# I.  <u>INTRODUCTION</u>

In connection with Plaintiffs' Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Motion for Final Approval"), filed simultaneously with this Motion,[1] Plaintiff and Class Counsel respectfully moves this Court for common fund award of attorneys' fees in the amount of $32,064.00 and costs in the amount $936.00, for a total common fund award of $33,000.  This award represents thirty-three percent (33.0%) percent of the total $100,000 Settlement Payment Class Counsel negotiated for the Class.  *See* Whitelock Aff. ¶ 37.

Class Counsel's common fund fee/cost request fits squarely within the range of typical fee awards in common fund/class action cases within the Eleventh Circuit and elsewhere.  *See, e.g., Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1291 (11th Cir. 1999) (affirming fee award of one-third of $40,000,000.00 common fund created by counsel's efforts); *see also Seghroughni v. Advantus Rest. Inc.,* No. No. 8:12–cv–2000–T–23TBM, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee … which is one-third of the settlement fund … is fair and reasonable in light of the results obtained by the Lead Counsel, the risks associated with this action, the Lead Counsel's ability and experience in class action litigation, and fee awards in comparable cases."); *Wolff v. Cash 4 Titles*, No. 03–22778–CIV, 2012 WL 5290155, at *4 (S.D Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143(ENV)(RER), 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ("Class Counsel's request for 33 1/3% of the fund

---

[1] For a detailed account of the factual and procedural background of this case, Class Counsel refers the Court to the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval and the supporting Affidavit of Christopher J. Whitelock in Support of Plaintiffs' Motion for Final Approval of the Class Action Settlement, Approval of Service Awards, and Approval of Attorneys' Fees, and Reimbursement of Expenses, attached hereto as **EXHIBIT 1**, and cited throughout this Motion.

is reasonable and 'consistent with the norms of class litigation …'") (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452(RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008), and citing cases); *Hosier v. Mattress Firm, Inc.*, No. 3:10–cv–294–J–32JRK, 2012 WL 2813960, at *4 (M.D. Fla. June 8, 2012) (approving a common fund FLSA settlement which provided 30% of the common fund for attorneys' fees and costs); *Morefield v. NoteWorld, LLC*, Nos. 1:10–CV–00117, 1:11–CV–00029, 2012 WL 1355573, at *5 (S.D. Ga. Apr. 18, 2012) (class settlement approved with 33 1/3 of the common fund payable as attorneys' fees); *Waters v. Cook's Pest Control, Inc.*, No. 2:07–cv–00394–LSC, 2012 WL 2923542, at *16 (N.D. Ala. July 17, 2012) (approving attorneys' fees in the amount of 35% of the fund); *Atkinson v. Wal-Mart Stres, Inc.*, No. 8:08–CV–691–T–30TBM, 2011 WL 6846747, at *6 (M.D. Fla. Dec. 29, 2011) (approving class settlement with one-third of maximum common fund apportioned as attorneys' fees); *Gutter v. E.I. DuPont De Nemours & Co.*, No. 1:95-cv-02152-ASG, D.E. 626 at 7 (S.D. Fla. May 30, 2003) (awarding class counsel 33.3% of the Settlement Fund as attorneys' fees ($1,201,728.42) because they expended significant time and resources on a purely contingent basis under the common fund theory); *In re Terazosin Hydrocholoride Antitrust Litig.,* No. 1:99-md-01317-PAS, Doc. No. 1557 at 8-10 (S.D. Fla. Apr. 19, 2005) (awarding class counsel 33.3% of settlement fund in part because they prosecuted the action on a wholly contingent basis).

Class Counsel's efforts to date have been without compensation, and their entitlement to payment has been wholly contingent upon achieving a good result.  *See* Whitelock Aff. ¶ 4.  For the reasons set forth below, Class Counsel respectfully submits that the attorneys' fees and expense reimbursement they seek are fair and reasonable under the applicable legal standards,

2

and should be awarded in light of the contingency risk undertaken and the result achieved in this case.

## II. LEGAL AUTHORITY

### A. Class Counsel Is Entitled to a Reasonable Fee of Thirty-Three Percent (33.0%) of the Maximum Settlement Payment

#### 1. The Eleventh Circuit Dictates that Class Counsel's Fees Should Be Awarded From the Common Fund Created Through Class Counsel's Efforts

It is well-established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained. *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs. The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1202 (N.D. Ill. 1989) (citing *Boeing*, 444 U.S. at 478)); *see also Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1195 (6th Cir. 1974). The common benefit doctrine recognizes that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant. *Boeing*, 444 U.S. at 478; *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392 (1970). The Supreme Court, the Eleventh Circuit, and courts in this District have all noted that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (citing *Boeing*, 444 U.S.

at 478); *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval.").

"In the Eleventh Circuit, class counsel is awarded a percentage of the fund generated through a class action settlement. *In re Checking Account Overdraft Litigation,* 830 F. Supp. 2d 1330, 1358 (S.D. Fla. 2011).[2]  In *Camden I*, the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case.  Henceforth, in this Circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774.

"The lodestar approach should not be imposed through the back door via a 'cross check.'" *In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d at 1362.  Rather, the lodestar "creates an incentive to keep litigation going in order to maximize the number of hours included in the court's lodestar calculation." *In re Quantum Health Resources, Inc.*, 962 F. Supp. 1254, 1256 (C.D. Cal. 1997).  Precisely for this reason, in *Camden I*, the Eleventh Circuit criticized the lodestar and the inefficiencies that it creates.  946 F.2d at 773-75.  In so doing, the court "mandate[d] the *exclusive* use of the percentage approach in common fund cases, reasoning that it more closely aligns the interests of client and attorney, and more faithfully adheres to market practice." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir.

---

[2] *See also Waters*, 190 F.3d at 1295 ("no case has held that a district court must consider only the actual payout in determining attorneys' fees") (awarding attorney fees based on a percentage of the common fund and not claims made); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 102 (9th Cir. 1997) ("We conclude that the district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund …") (awarding attorney fees based on a percentage of the 4.5 million dollar common settlement fund).

4

2000) (emphasis added); *see also* Alba Conte, *Attorney Fee Awards* § 2.7, at 91 n. 41 ("The Eleventh … Circuit [] repudiated the use of the lodestar method in common-fund cases"). Under *Camden I*, courts in this Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all.  *See, e.g., David v. Am. Suzuki Motor Corp.*, No. 08–CV–22278, 2010 WL 1628362, at *7-8 (S.D. Fla. Apr. 15, 2010).[3]  "[A] common fund is itself the measure of success and represents the benchmark on which a reasonable fee will be awarded … In this context, monetary results achieved predominate over all other criteria. *Camden I*, 946 F.2d at 774 (citations and alterations omitted).

### 2.  The *Camden I* Factors Support an Award of 33.0 Percent of the Fund.

This Court has substantial discretion in determining the appropriate fee percentage awarded to counsel.  "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case."  *In re Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774).

Here, pursuant to the terms of the parties' Joint Stipulation of Class Action Settlement Agreement and Release ("Settlement Agreement"), attached as Exhibit "1" to D.E. 25 (Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure and Memorandum of Law in Support) ("Motion for Preliminary Approval"), Class Counsel will

---

[3] *See also Stahl v. MasTec, Inc.*, No. 8:05-CV-1265-T-27TGW, 2008 WL 2267469, at *1-2 (M.D. Fla. May 20, 2008); *Sands Point Partners, L.P. v. Pediatrix Med. Group, Inc.*, No. 99-6181-CIV, 2002 WL 34343944 (S.D. Fla. May 3, 2002); *Fabricant v. Sears Roebuck & Co.*, No. 98–1281–Civ, 2002 WL 34477904 (S.D. Fla. Sept. 18, 2002).

receive $33,000 in attorneys' fees and costs, which is 33.0% of the $100,000 Settlement Payment (the "Fund").  Class Counsel respectfully suggests that such an award is appropriate, given the circumstances of this case, and the amount request is well within the range of typical fee awards for common fund cases.

The Eleventh Circuit's factors for evaluating the reasonable percentage to award class-action counsel are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations by the client or the circumstances; (8) the amount involved and the results achieved; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases.  *Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

These twelve factors are not exclusive.  "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action."  *In re Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775).  These factors are merely guidelines, and the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case."  *In re Sunbeam*, 176 F. Supp. 2d at

6

1333 (quoting *Walco Invs., Inc. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997)).  The *Camden I* factors are discussed below.

     a.  **Time and Labor Involved**

Class counsel expended significant effort to achieve the substantial settlement fund for the Class Members.  While the parties did not engage in formal discovery *per se*, the parties engaged in substantial and voluminous informal discovery before agreeing to resolve the case. *See* Whitelock Aff. ¶ 20. Class Counsel obtained, through their own investigation and from Defendant's voluntary disclosures, information regarding the manner in which the tip-pool has been operated over time, the relevant policies and procedures of Defendant, payroll records regarding the number of hours worked during the class period, and adjustments and classifications made to the operation of the tip pool to ensure compliance with the FLSA and FMWA.  *See* Whitelock Aff. ¶ 13.  To date, Plaintiffs' counsel has expended in excess of 120 hours investigating, identifying, litigating, and resolving this case, as well as $936.00 in costs. *See* Whitelock Aff. ¶ 13.

The parties' settlement negotiations were also extensive.  Beginning on June 27, 2016, the Parties engaged in extensive negotiations to resolve this matter on behalf of the Named Plaintiffs and the Putative Class.  *See* Whitelock Aff. ¶ 8.  These efforts consisted of conferences, document reviews, meetings, written correspondence, telephone conferences and otherwise.  After three months of negotiations, the Parties reached a settlement in principle, on a class-wide basis, regarding all claims in the case.  *See* D.E. 20 (Notice of Settlement); *see* Whitelock Aff. ¶ 19.  After lengthy additional negotiation and conferences, the Parties reduced

7

their agreement to a formal Joint Stipulation of Class Action Settlement Agreement and Release. *See* Whitelock Aff. ¶ 20; *see also* Settlement Agreement, attached as Ex. 1 to D.E. 25.

On November 18, 2016, the Plaintiffs' filed a Motion For Preliminary Approval Of Settlement, Conditional Certification Of The Settlement Class, Appointment Of Plaintiffs' Counsel As Class Counsel, And Approval Of The Proposed Notice Of Settlement And Class Action Settlement Procedure And Memorandum Of Law In Support. *See* D.E. 25; Whitelock Aff. ¶ 21. The Court granted Plaintiffs' Motion, by Order entered December 22, 2016. *See* D.E. 27; Whitelock Aff. ¶ 22.

In performing the aforementioned work on behalf of the class, Class Counsel spent over 120 hours of attorney, paralegal, and staff member time; they are also meant to compensate Class Counsel for the time that has been spent administering the settlement, and time spent administering the settlement in the future. *See de Munecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010) ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request" of 33% of the fund); *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time"). In addition, administering class settlements of this nature and size requires a substantial and ongoing commitment. *See* Whitelock Aff. ¶ 27. For example, since the Notices were sent out, Class Counsel and staff have responded to inquiries from class members requesting information

8

regarding the terms of the settlement and the amount of their settlement award.  *See* Whitelock Aff. ¶ 27.   Class Counsel expects to respond to more class member inquiries after final approval, especially after checks are issued.  *See* Whitelock Aff. ¶ 27.

b. **The Issues Involved Were Novel and Difficult and Required the Skill of a Highly Talented Team of Attorneys**

Courts have recognized that wage and hour cases involve complex legal issues.  "FLSA claims typically involve complex mixed questions of fact and law … These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings."  *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981); *see also Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("class action suits have a well deserved reputation as being most complex.").

Among FLSA/Wage and Hour cases, the most complex type is the "hybrid" action brought here, where state wage and hour violations are brought as an "opt out" class action pursuant to Federal Rule of Civil Procedure 23 in the same action as the FLSA "opt-in" collective action pursuant to 29 U.S.C. § 216(b).  Because the same set of operative facts is being applied and analyzed under both statutory frameworks, justice is served and consistency and efficiency are achieved by having the litigation in one forum.  *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001).

In this case, there were several disputed questions of law and fact, including whether the Defendant operated and maintained a valid tip-pool, whether changes made to the tip-pool ensured compliance with the FLSA and FMWA, whether any non-compliance was willful, whether the Defendant was entitled to the benefit of the tip credit, and how much monies could the Plaintiffs and the Class expect to possibly receive.

9

Given the level of complexity in this matter as outlined above, the attorneys on both sides of the case were required to have an exceptional amount of skill and knowledge in wage and hour law and large complex litigation, in order to properly litigate the case on behalf of their clients.  *See Walco*, 975 F. Supp. at 1472 (explaining that, "The petitioning attorneys are experienced, diligent, and reputable. Given the quality of the defense counsel …, the Court is not confident that attorneys of lesser aptitude could have achieved similar results"); *see also Camden I*, 946 F.2d at 722 n.3 (courts consider the "experience, reputation, and ability of the attorneys"); *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992).  "The fact that this level of legal talent was available to the Settlement Class is another compelling reason in support of the fee requested … In the private marketplace, as pointed out by several of Plaintiffs' experts, counsel of exception skill commands a significant premium."  *In re Checking Accounting Overdraft Litigation*, 830 F. Supp. 2d at 1363.  So it should be here.  *Id.*

### c.  The Claims Against Defendants Entailed Considerable Risk

Prosecuting these claims was a significant undertaking.  The risks involved in this type of case from the Plaintiffs' prospective have been discussed at length above, and elsewhere. "The simple fact is that there were a larger than usual number of ways that Plaintiffs could have lost this case, and they still managed to achieve a successful substantial settlement.   A significant amount of the credit for this must be given to Class Counsel's strategy choices, effort, and legal acumen."  *Id.* at 1364.[4]

---

[4] "[T]he very uncertainty of outcome of litigation, as well as the avoidance of wasteful litigation and expense, lay behind the Congressional infusion of a power to compromise.  This is a recognition of the policy of the law generally to encourage settlements.  This could hardly be achieved if the test on hearing for approval meant establishing success or failure to a certainty."  *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981) (quoting *Fla. Trailer and Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960)).

"A court's consideration of this factor recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk.  Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case.  All of this and more is enveloped by the term 'undesirable.'"  *In re Sunbeam*, 176 F. Supp. 2d at 1336.  In addition, "[t]he point at which plaintiffs settle with defendants … is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them."  *Skelton v. General Motors Corp.,* 860 F.2d 250, 258 (7th Cir. 1988), *cert. denied*, 493 U.S. 810 (1989).  "Undesirability" and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight.  *See, e.g., Walco*, 975 F. Supp. at 1473.  Courts have repeatedly recognized that "[a]ttorneys' risk is perhaps the foremost factor in determining an appropriate fee award."  *Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677-CIV, 2008 WL 649124, at *14 (S.D. Fla. Jan. 31, 2008) (citing *Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007)); *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992) ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award.") (citing cases).

Throughout the pendency of the case, Defendant maintained that the tip-pool was operated in accordance with law at all times, but nevertheless clarified the job responsibilities of all employees that were eligible to participate in the tip-pool to ensure they all qualified as tipped employees, which ultimately ensured that any employee that was receiving tips from the tip-pool in which the Putative Class participated received at least $30.00 per month in tips as is required pursuant to 29 USC 203(t) and 29 CFR 531.51.  Thus, Defendant asserted and

11

continues to assert that it has substantial, valid defenses to the Named Plaintiffs' claims and those of the Putative Class, including, in part, (1) that the tip-pool was valid, including during the entire Claim Period; and (2) Defendant cannot be found to have committed "willful" violations and therefore liquidated damages are not available.   "[G]iven the positive societal benefits to be gained from lawyers' willingness to undertake difficult and risky, yet important, work like this, such decisions must be properly incentivized."   *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1364.   Respectfully, Plaintiffs submit that the proper incentive here is an attorneys' fee and costs award of $33,000.00 (or 33.0% of the Settlement Fund).

       d.  **Class Counsel Assumed Substantial Risk to Pursue This Action on a Pure Contingency Basis, and Were Precluded From Other Employment as a Result**

Class Counsel prosecuted the action entirely on a contingent fee basis.   *See* Whitelock Aff. ¶ 37.   In undertaking to prosecute this complex action on that basis, Class Counsel assumed a significant risk of nonpayment or underpayment.   *See* Whitelock Aff. ¶ 39.   Numerous cases recognize that the contingent fee risk is an important fact in determining the fee award.   "A contingency fee arrangement often justifies an increase in the award of attorney's fees."   *In re Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)); *see also Ressler*, 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award.") (citing cases); *Walters v. Atlanta*, 652 F. Supp. 755, 759 (N.D. Ga. 1985); *York v. Ala. State Bd. of Educ.*, 631 F. Supp. 78, 86 (M.D. Ala. 1986).

As Judge King has observed:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer … A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens*, 118 F.R.D. at 548 (internal citations omitted). The risks taken by Class Counsel have been discussed. It is uncontroverted that the time spent on the Action was time that could not be spent on other matters. Thus, this factor too supports the requested fee.

### e.   The Requested Fee Comports With Customary Fees Awarded in Similar Cases

The attorneys' fees sought in this case are consistent with those that have been routinely held to be reasonable in other class action/common fund settlement throughout this District and beyond. Indeed, numerous recent decisions with this Circuit and in similar wage and hour class/collective actions have awarded attorneys' fees up to, and often in excess of, the 33.0% of the Settlement Fund, requested by class counsel here. *See, e.g., Seghroughni,* 2015 WL 2255278, at *1 ("An attorney's fee … which is one-third of the settlement fund … is fair and reasonable in light of the results obtained by the Lead Counsel, the risks associated with this action, the Lead Counsel's ability and experience in class action litigation, and fee awards in comparable cases."); *Wolff*, 2012 WL 5290115, at *4 ("One-third of recovery is considered standard in a contingency fee agreement."); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 ("Class Counsel's request for 33 1/3% of the fund is reasonable and 'consistent with the norms of class litigation …'"); *Hosier*, 2012 WL 2813960, at *4 (approving a common fund FLSA settlement which provided 30% of the common fund for attorneys' fees and costs); *Morefield*, 2012 WL 1355573, at *5 (class settlement approved with 33 1/3 of the common fund payable as

13

attorneys' fees); *Atkinson.*, 2011 WL 6846747, at *6 (approving class settlement with one-third of the maximum common fund apportioned as attorneys' fees); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1210 (S.D. Fla. 2006) (awarding fees of one-third of settlement fund); *Gutter v. E.I. Dupont De Nemours & Co.,* No. 1:95-cv-02152-ASG, D.E. 626 at 7 (S.D. Fla. May 30, 2003) (awarding class counsel 33.3% of the Settlement Fund as attorneys' fees ($1,201,728.42) because they expended significant time and resources on a purely contingent basis under the common fund theory); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 1:99-md-01317-PAS, Doc. No. 1557 at 8-10 (S.D. Fla. Apr. 19, 2005) (awarding class counsel 33.3% of settlement fund in part because they prosecuted the action on a wholly contingent basis); *In re Managed Care Litig. v. Aetna,* MDL No. 1334, 2003 WL 22850070, at *6 (S.D. Fla. Oct. 24, 2003).

f. **The Remaining *Camden I* Factors Also Favor Approving Class Counsel's Fee Request**

The remaining *Camden I* factors also support Class Counsel's fee request.  The burdens of this litigation and the results obtained on behalf of Plaintiffs and the Class weigh in favor of the fee requested.  The fee request is firmly rooted in "the economics involved in prosecuting a class action."  *See In re Sunbeam*, 176 F. Supp. 2d at 1333.  "[P]roper incentives must be maintained to insure that attorneys of this caliber are available to take on cases of significant public importance like this one."  *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1368.  The factual record in this case compels this result.

### III. CONCLUSION

For the reasons set forth above, Plaintiff and Class Counsel respectfully request that the Court approve the award of Class Counsel attorneys' fees and costs in the amount of $33,000, which is 33.0% of the Settlement Payment Class Counsel obtained on behalf of the Class in this case.

Dated: April 26, 2017.

Respectfully submitted,

| | |
|---|---|
| **LAW OFFICES LEVY & LEVY, P.A.** | **WHITELOCK & ASSOC., P.A.** |
| 1000 Sawgrass Corporate Parkway, Suite 588 | 300 Southeast 13th Street |
| Sunrise, Florida 33323 | Fort Lauderdale, FL  33301 |
| Telephone: (954) 763-5722 | Telephone:  954.463.2001 |
| Facsimile:  (954) 763-5723 | Facsimile: 954.463.0410 |
| | |
| */s/ Chad E. Levy* | */s/ Christopher J. Whitellock* |
| Chad E. Levy, Esq. | Christopher J. Whitelock |
| Florida Bar No.: 851701 | Florida Bar No.:  67539 |
| chad@levylevylaw.com | cjw@whitelocklegal.com |

### CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that Plaintiffs' counsel conferred with Defendant's Counsel, who is unopposed to the filing of this Motion.  The undersigned furnished to Defendant's Counsel a draft of this Motion prior to filing, along with exhibits, and he consented to same.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 26, 2017, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

/s/ *Chad E. Levy*_____
CHAD E. LEVY

## <u>SERVICE LIST</u>

Christopher John Whitelock, Esq.
Whitelock & Associates
300 Southeast 13th Street
Fort Lauderdale, FL 33316-1154
Telephone: 954-463-2001
Facsimile: 954-463-0410
cjw@whitelocklegal.com
*Co-Counsel for Plaintiff*


Andrew Lavin, Esq.
Lavin Law Group
2670 NE 215 Street
Miami, Florida 33180
alavin@lavinlawyers.com
*Counsel for Defendant*

16